The next matter before us is American Southwest Mortgage Company v. Continental Casualty Company, case number 22-6071, and counsel is appearing by video as a late accommodation due to, I think, some bad COVID news. And one thing we have to remember is there's a little bit of a lag when we have people appearing by video. We'll try to be sensitive to it, but it sometimes is a challenge. And we are ready when you are. Good morning. May it please the Court. My name is Richard Simpson. I represent Continental Casualty Company in this matter. I'd like to reserve five minutes for rebuttal. One thing that becomes clear if one spends a day reading all of the related claim cases cited by both sides in this case is they really are consistent and understandable. There's a theme that comes through. If the insurance policy does not define the term related, then there's a split. Some courts say that's unambiguous, it's broad, it encompasses logical and causal relationships. Other courts say, no, it's ambiguous, it has to be construed narrowly. That's not where we are. The other thing that comes through is if the policy defines the term related claim or interrelated claim, then the court applies the definition. Any ambiguity there might be in the undefined term is resolved. We're not aware of a single case that has found the term logically or causally connected by any common fact, circumstance, transaction, or event to be ambiguous. In the Bryan Brothers case, that court said it also couldn't find any case finding it to be ambiguous. It conveys that any connection, it broadly sweeps within it, any meaningful commonality. And so courts will apply the definition. One good illustration of that are the Illinois cases. There was an Illinois case in which the other side relies, Village of Camp Point, I believe, which said the term interrelated claim, related claim was ambiguous. Later, another Illinois appellate court, considering a policy that added the exact definition here was another CNA policy, said that resolves the ambiguity. Now it's construed broadly. In that case, Howard Hoffman said claims by, I think it was 16 different folks who had had their embezzlement funds embezzled by a firm employee, all those claims were related. The policy is written in a disjunctive way so that you can have, if all claims are arising out of a single act or omission, is one way that they're related claims. And then secondly, that if they are logically or causally connected by any common fact, circumstance, situation, transaction. And as I understand the district court's decision, with respect to claims on individual one year of an audit, by the two claimants, the court said it's the same omission, same act or omission, because the error is the same error that they're relying on. Then with respect to whether all of the audits, the two or the three years, which we'll get into, are covered as a related claim, the court said, no, they're not because they're due error, and also they're not causally or logically connected. Is that your understanding of where we are? Yes, Your Honor. And I think the critical issue before the court is whether claims based on those audits, the three audits there were, are those logically or causally connected by any common fact, circumstance, transaction or event. So if we break it out and we say causally connected, I think the case law says that when we're talking about causally connected, it means the prior thing leads inevitably to the next thing. Causally is probably narrower than logically. That's my point. And I think it's probably but for causation or approximate causation. But the key thing is that all the courts that have looked at it have indicated that, as Your Honor said, disjunctive, causally or logically, it's either one. And the reason we focused on, one can make an argument here, they're causally connected because it's the same mistake. But we didn't go there because the logical connection is the broader one. And it certainly fits comfortably within that. Okay. And what does logically connected mean in your view? I think basically whether there's any meaningful commonality between the wrongful acts. And that's important. The focus is on the wrongful acts, the alleged wrongful acts by the insured. And whether there's a meaningful commonality. And one point I wanted to make, if you do read all of these cases, including the Moran case on which the other side relies, they really are consistent in coming to that conclusion. And so, for example, if you take the Morang formulation, that court described it, the district court there and a firm by this court, described it as one attends or flows in an inevitable or predictable way from the other. Well, what is the actual malpractice here? Is it failure to actually verify the securities that were supposedly secured? Or is it just the initial mistake that was carried forward in two other audits? The malpractice, your honor, was failing to detect this ongoing scheme. And basically the allegation is that in conducting the first audit in 2014, the auditors didn't pull the source documents that would have allowed them to discover that the audit client was engaged in a fraud. Well, is that also malpractice, where you do not personally attempt to verify a fact that somebody else might have messed up a year early? That was the alleged malpractice. And as I understand, the accountants denied that they were negligent. But the case was settled. And for the insurance coverage purposes, the focus is on the alleged wrongful acts. And so the allegation is that it was malpractice not to pull the source documents. And if you had done that, if you'd conducted a proper audit, you would have discovered this scheme. And then the allegation is you made the same mistake and failed to discover the same ongoing scheme the next year and the next year. And so you've got one scheme that's ongoing by this first mortgage company. You've got the auditor conducting it. Well, that could go forever, theoretically. Excuse me, Your Honor? I said that could go theoretically forever. In other words, if the accountants in this particular firm are just lazy and they don't verify as an order they ought to verify, there's still only one claim. Exactly, Your Honor. It's the same mistake that they made three times. What is the purpose of a single claim limit of $1 million and an aggregate limit of $3 million? Yes, and the point of that is it protects the insured. And so you had a $1 million limit and $1 million aggregate, one claim could mean no coverage for other claims. Here, there's a $1 million limit for all the interrelated claims. If they had some unrelated claim, they'd have additional coverage for that. If you look at, as I said, it's the same mistake made three times. And if you look at the commonalities, it's the same audit client, first mortgage. At one point, the other side of this brief repeatedly refers to cases saying that more than one client, there's more than one duty. There's only one client here. It's first mortgage. The banks are not clients. And so those cases, we distinguish them, but they're irrelevant. But it is true that there was no, you had to make a mistake every time you did the audit. There was nothing that prevented the auditor from going and pulling the underlying documents in the next audit. Yes, Your Honor, and I think that's where, if you look at the Morang formulation again, it's not inevitable, but it's predictable. Well, I guess that's the question. Yeah, well, and I think, Your Honor, if you compare it to other cases, for example, the Eighth Circuit in Kilcher, and that's a case this court cited with approval in the Morden case. In Kilcher, you had an investment advisor who allegedly was churning accounts from multiple different clients. Basically, she represented Native Americans on investments and allegedly was taking advantage of them, churning, making inappropriate investments. Multiple clients over multiple years, multiple different kinds of inappropriate investments. And with the exact same language here, the Eighth Circuit said, those are all related, and this court cited that case with approval. If you look at the Belcher case in the Eleventh Circuit, that was a pharmacy that was compounding drugs. And they said the same person was responsible in each instance. And here, it's the same accountant. Exactly. If you think about Belcher in comparison to this one, this would follow a fortiori from Belcher. In Belcher, the pharmacy was compounding drugs. There were two different drugs. It wasn't the same drug. It was done at different times. And again, it's not inevitable that every time they compounded it, they would make the same mistake. Those drugs, it was done over several months, as I recall. The drug is an eye injections drug. It was injected into, I think it was 16 or 18, multiple claimants. All had separate claims. And the Eleventh Circuit said, that comfortably fits within this definition. And the court said, in the exact same language here, the question isn't, are there differences? The question is, are there commonalities? And here, as I indicated, this case follows a fortiori from many of the cases that have been cited, Kilcher and Belcher just being examples. This court's decision in Morden, and as I said, if you look at the definition, what does predictable mean? It's behaving in a way that one might expect. It's not inevitable. But if you look at the opposing party's formulation of the issue presented, very first page of their very first brief, they indicate that the accountants, the error was not conducting a fresh audit each time, being influenced by the prior. And so, as I indicated, the commonalities here are overwhelming. Of course there are differences, but the cases make clear that the focus is on, are there commonalities? It's very broad language intended to bring together claims that have any kind of meaningful commonality. Unless there are questions, I'll reserve the remainder of my time for rebuttal. Thank you. Thank you. We are ready for you when you are. May it please the court. My name is George Friedman. I represent American Southwest Mortgage Company. I understand, although I can see Georgia Pearson, his president in the courtroom, he represents American Southwest Mortgage Funding Corporation, and I will be making the argument on behalf of each entity. The district court and auditors understood what continental refuse is to acknowledge. Auditing a company with $340 million on lines of credit requires an independent look at source documentation for each audit without relying on the information of the previous audits. Auditors understood that when they just submitted their audit report, they said, quote, performing procedures to obtain audit evidence about the amounts and disclosures in the financial statements, end quote. The district court said, quote, the whole purpose of an audit is to independently evaluate anew the veracity of a particular financial statement, end quote. Eastman Continental stipulates that auditors, quote, had a duty when performing each annual audit in 2014, 2015, and 2016 to obtain and review the source documents for the mortgage loans on the lines of credit. Auditors' failure in each of these audits cost my client over $7 million, and funding court over $80 million, of which only $3 million is insured. Here, Continental seeks to save itself $2 million by using FMC scheme versus mortgage company scheme as the common fact. But what Continental fails to acknowledge is that auditors are the insured, not versus mortgage company. In Cyber and Jilture, the court said the required commonality is the wrongful act of the insurer. Continental did not insure for mortgage companies. Auditors' failure to do the independent audit in 2014, then in 2016, and I'm sorry, 2015, and 2016 must be logically related to Continental as the limit is it's over. And how do you define logically for these purposes? I define it as this court has defined it in Orlain, which is one has to tend or flow from the other in an inevitable and predictable way. Isn't it inevitable or predictable? Correct. Not and predictable? That's what I don't have in front of me. That's how I wrote it down. If it isn't an and, I'll stand corrected. But and would be better for me. So I'd much rather it be and. Now you said and, and I was correcting you to or. Oh, I meant or, and I apologize. So or is how I understand it. So the point that I think is to the court's indication, what is the common fact that Continental seeks to address here? And they want to address it as FMC speaking. But again, FMC is not the insurer. The common, what's missing from the stipulated facts are facts that I couldn't know because I didn't represent the auditors and I'm not their insurance company, is what exactly did auditors do to miss the source information? In 2014, they could have just been late, as one of the panelists mentioned. And not even thought it, found the source information. In the next year, they could have grabbed the source information and did compare it with the lines of credit information. And then in the final year, they could have compared it or maybe compared it incorrectly. And it's, and this is important because it's Continental's burden here to establish the commonality. If they can't establish the commonality as the district court found, then they can't rely on the interrelated acts clause to make this a single claim. So I think that's an important distinction. The other thing I want to mention is in this Continental, as counsel said at the very beginning of the argument, how do you make sense of these hundreds of cases that have tried to define these terms? In the fiscal sense, everything is related. In this work, as Scott said, the language of these types of policies make it depend on one viewpoint, one viewpoint of the, sorry, the viewpoint of the proponent. In other words, the subjective type of test. I suggest that we look at Continental's own interpretation of these different cases. In the Shad's case that was in the Western District of Oklahoma, there they talked about different cases that deal with professionals like lawyers or accountants or auditors. In those cases, because of the separate duties that they owe to their clients, those are not interrelated type of claims. And I'll beg to differ with counsel that tries to limit Oklahoma law with respect to auditors. Auditors are treated in Oklahoma law similarly to lawyers. They have a duty to, under the Shad's case, to each of the entities that are relying on the auditors. In this case, mortgage court and funding court. So the other distinct factor of these cases that Continental in the Shad's brief talks about is the language itself. The language itself, you hear, is a logically or causally connected type of language. That's different than many of the other cases. And in many of the other cases use a very common, use a common nexus or don't define relatedness. Here, logically or causally connected is talked about in the 10th Circuit as inevitably or predictably flowing from the other. In Gregory's example, it was just a related case. That's a 7th Circuit case. In the 11th Circuit in Belcher, he talked about proximate causation. But of course, it requires something more than a mere coincidence. In the 11th Circuit in the Wendt case, it's defined related as having a logical or causally connection. But then there's a primal term. I would submit that the 10th Circuit is the only circuit that talks about this one must intend or flow from the other in an inevitable or predictable way, which distinguishes the 10th Circuit from the other circuits. Well, a number of those cases that you referred to don't have the same language as this policy. A lot of them don't have logically connected. And so, I mean, we have to start with the policy language, don't we? I agree. And that's why I think trying to decide this case on cases from other circuits that have different language, as Continental said in the Shad 3, is wrong. We ought to be able to look at Moreland, we look at Ska, we look at the other cases from this circuit that evaluate logically connected. And these audits are not logically connected under that definition because they can't point to a single mistake that is the same in each of the three. They don't have any evidence of that. I'd like to take a few minutes to talk a little bit about this two versus three audit and the Henry durability case. Here, all parties agree there were three audits, not two. Continental stipulated to this fact. Continental does not argue that the fact is incorrect. Nevertheless, Continental seeks to avoid a million in exposure based on lender's honest briefing mistake. Now, of course, lenders are not required to explain how the mistake was made, and that's this work case of FDIC versus Prussia. The question is whether Continental is entitled to relief from its agreed stipulated fact that is indeed true. And that standard is found in Henry durability, another 10 circuit case. And we review for abuse of discretion, right? I think that's true, although I have not found a case where a stipulated fact that everybody agrees is true has been disregarded by a different court, and that's been reviewed on appeal. So I assume abuse of discretion, but I don't know that to be stated in any case I've seen. Well, didn't in Ray durability use abuse of discretion? It did, but that was a question of their question was, can they take a stipulated fact and in the party that wants to remove stipulated fact have that done if it doesn't cause manifested injustice to the party opposing it? Here, we have a party seeking and finding a manifested injustice that wants to change the stipulated fact that everybody agrees is true. But I don't mean to quibble with an abuse of discretion standard. I just mean to say that I have not seen a case like this at an appellate level. Under any durability, a court can modify stipulated fact as long as it does not amount to manifest injustice to the non-requesting party. Here, the non-requesting party are the lenders, Morris Court and Fenton Court. This change amounts to a million dollar loss to them if the stipulated fact is disregarded. But the trial court erred in abuse of discretion if we use that standard review because it applied the manifest injustice standard to Continental, not to the lenders. Under any durability, Continental's manifest injustice is irrelevant. In Prussia, the court explained that breathing strategy does not meet the manifest injustice standard. Why that's important is their alleged manifest injustice is that the lender somehow intended to counteract the series of audits argument in saying there were two rather than three. But as Prussia said, breathing strategy does not meet the manifest injustice standard. And further, it cannot be factually true in this case that that's what lenders did because lenders' mistake was in the very first brief on January 13th of whatever year that was in saying there were two versus three at the very same day that Continental filed their brief alleging that the audits were a series.  Another argument that lenders somehow waived the stipulated fact involves only cases where an argument was waived. There's never been a case where a fact has been waived. Continental has not cited a single case where this court or any other court has waived a stipulated true fact. So if the abuse of discretion standard is the one we say that the trial court abuses the discretion in saying that there were two rather than three audits that were relied on when, in fact, the industry stipulated fact was that there were three audits. And unless there's any questions, I'll give up the balance of my time. Thank you. Thank you. Thank you. The Kilcher case, the Belcher case, the W.N. Miller case from the Fourth Circuit, and others all involve exactly the same policy language at issue here. They all were policies issued by the same group of insurance companies, exact same language. All those courts found it not to be ambiguous. And as I said, no court has ever found it to be ambiguous. They all agree that it sweeps broadly. Does it have to be inevitable? No. As Judge McHugh indicated in the questioning earlier, the quote from Morang is inevitable or predictable. And predictable is a very different thing than inevitable. Here, as I indicated earlier, it may not have been inevitable that the auditor would make the same mistake. Maybe they do it differently. But it certainly was predictable. Well, because each audit was independent, and there are no stipulated facts as to how the error came about, it's not really inevitable that the same mistake would be repeated year after year. I agree that it's not inevitable, but it certainly is predictable. How is unpredictable if there's separate audits? It's something that, as I said, the definition of predictable dictionary definition is something that can be expected, that's not surprising. It's not inevitable. But given that this same auditor is looking at the same client and failing to detect in the same way, failing to detect the same scheme, it's pretty predictable. Would it be the same if a different auditor had done the second auditor and a third had done the third audit? Yes, that would be different. You would have different entities. Many of the commonalities would be different. But they're still using based on that first error in the first audit. No, respectfully, no, Your Honor. Because a different auditing company, they have standards to follow. But apparently, they're not following the standards. Well, the question is, is it predictable that a different auditor will make the same mistake this one did? That's more attenuated, certainly, than that the same auditor conducting the same audit would make the same mistake. Well, I think the point that was made in your opponent's argument was that we don't have any factual stipulate. We don't have any evidence of what happened in each audit to tell us how the mistake was made. So if you had the first audit where they didn't pull the underlying documents, and you had the second audit where they pulled the documents, but someone then forgot to look at them or made a mistake looking at them, and you had a third audit with another reason, that then they wouldn't be logically connected, because you're not repeating the same error. There's different reasons for the mistake. I would disagree, Your Honor, because you still have all the other commonalities. The fact that it's the same audit client, it's the same scheme being conducted through the period, they're failing to detect the same scheme, the details of how they made the mistake doesn't mean there's not commonality. And compared to the other cases, in Kilcher, multiple different investments, I see my time's up. May I finish this answer? Yes. In Kilcher, multiple different clients having investments made, recommended, and the commonality is simply that the advisor is trying to generate commissions. That's all that's in common. Look at in Belcher. It's not the same mistake being made in exactly the same way. We don't know the details there either. What we know is this same pharmacy kept formulating drugs in a way that they became adulterated. If you compare the facts here to Kilcher, Belcher, more than other cases that we've cited in our brief, this is a fortiori. Thank you. Thank you. We will be adjourned until tomorrow.